**STATE of Missouri, Respondent,**

v.

**James M. SCHMIDT, Appellant.**

No. 56888.

Missouri Court of Appeals,
Eastern District,
Division Two.

Jan. 22, 1991.

Lewis, Rice & Fingersh, Barry A. Short, Thomas L. Caradonna, Eric D. Paulsrud, St. Louis, for appellant.

William L. Webster, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jane B. Geiler, George W. Draper, III, Asst. Cir. Attys., St. Louis, for respondent.

CRIST, Judge.

Defendant, James Schmidt, was convicted of three counts of "neglect of resident of a facility" pursuant to § 198.070.11, RSMo 1986. He was sentenced to imprisonment on each count for five years, to run concurrently, and a $500 fine on each count. Defendant was president and part shareholder of the corporation which operated Mercy Convalescent Center, the facility in question.

Matthew Puchta (administrator), Willie Tiller (director of nursing), Alice Brown (assistant director of nursing), and defendant were all charged with committing the Class D felony of neglect of a resident of a facility. The charges alleged that these parties knowingly acted to neglect three residents of the nursing home, Mardell Ogle, Patty Herosy, and Dotsey Nelson, thus presenting an imminent danger to their health, safety or welfare.

A jury convicted Matthew Puchta, the administrator of the nursing home, of the charges against him on December 15, 1988. His conviction was reversed in the case of *State v. Puchta*, 786 S.W.2d 154 (Mo.App. 1990). Because the evidence presented in this case is substantially the same as the facts stated in *State v. Puchta*, except as hereinafter set forth, the opinion of *State v. Puchta*, 786 S.W.2d 154, is made a part hereof. Counts I and III against defendant, concerning the neglect of Mardell Ogle and Dotsey Nelson, are reversed because the proof as to these residents is substantially the same as in *State v. Puchta*.

Count II against defendant concerned the alleged neglect of Patty Herosy. Defendant was charged with neglect for failure to provide reasonable and necessary services to Patty Herosy to insure adequate nutrition and hydration and for failure to prevent and treat decubitus ulcers. The State offered an expert witness, Dr. Alwyn Kluttz, who testified concerning Herosy's condition on her admission to Incarnate Word Hospital. Dr. Kluttz did not testify in the *Puchta* case. However, the presence of Kluttz as a witness constituted the sole material difference, in the evidence concerning Herosy, between this case and *Puchta*. Dr. Kluttz's testimony did not substantially change the facts concerning Herosy as stated in *Puchta*.

Dr. Kluttz testified that the failure to have an egg crate mattress would present an imminent danger to the health, safety

and welfare of a person in Herosy's condition. The *Puchta* court states that in that case there was no evidence that Herosy was not furnished an egg crate mattress, which is used to prevent formation of decubitus ulcers. In the instant case, the evidence showed that the only time Herosy did not have an egg crate mattress was when it was in the laundry. The State furnished no evidence as to how long the egg crate mattress was in the laundry. Additionally, Dr. Kluttz did not render an opinion as to the cause of dehydration or malnutrition. Accordingly, Count II as to Patty Herosy must also be reversed.

Reversed.

GARY M. GAERTNER, P.J., and SIMON, J., concur.